IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRACY E. TAYLOR,

        Plaintiff,

   v.

FIRST TECHNOLOGY FEDERAL
CREDIT UNION, an Oregon corporation,
and DOES 1 through 20,

        Defendants.

No. 3:15-cv-00023-HZ

OPINION & ORDER

Tracy E. Taylor
6263 NE Dereck Ln.
Hillsboro, OR 97124

    Pro Se Plaintiff

Mitchell C. Baker
Alexander A. Wheatley
FISHER & PHILLIPS, LLP
111 SW Fifth Avenue, Suite 4040
Portland, OR 97204

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Pro se Plaintiff Tracy Taylor was terminated from her employment with Defendant First Technology Federal Credit Union (FTFCU). Plaintiff brings this action against FTFCU and "DOES 1 through 20," alleging violations of federal and state laws. Defendants move for partial dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

Plaintiff brings eleven claims against Defendants: (1) hostile work environment based on gender in violation of 42 U.S.C. § 2000e; (2) national origin harassment and discrimination in violation of 42 U.S.C. § 1981; (3) retaliation in violation of 42 U.S.C. § 2000e-3(a); (4) retaliation in violation of 42 U.S.C. § 1981; (5) wrongful termination in violation of public policy; (6) intentional infliction of emotional distress; (7) failure to provide adequate rest periods; (8) interference with prospective economic relations; (9) defamation; (10) intentional violation of FMLA; and (11) intentional violation of FTFCU's internal definition of harassment. First Amended Complaint ("Compl.") at ¶¶ 36 – 123.

Defendants move to dismiss Claims 1-4, 6-8, and 10-11. The Court grants Defendants' partial motion to dismiss.

## BACKGROUND

Defendant FTFCU, an Oregon corporation, owns and operates various banking institutions, branches, and investment offices. Compl. ¶ 2. "DOES 1 through 20" are fictitiously named Defendants—agents, servants, employees, or representatives of FTFCU who are "responsible in some manner for the occurrences" alleged. Id. at ¶¶ 5, 6. Plaintiff attaches a "Personnel List" to the First Amended Complaint that contains the name of seven "agents of

2 – OPINION & ORDER

Defendant." See Compl. Att. 1, ECF 7-1. The Court construes this list of names as comprising seven of the twenty "DOES" named as Defendants.

Between September 17, 2012 and November 7, 2014, Plaintiff was a loan processor and quality assurance analyst employed by FTFCU. Id. at ¶ 2. Plaintiff's job duties included auditing FTFCU's compliance with lending regulations. Id. at ¶ 15. Early in Plaintiff's employment, she informed FTFCU management that FTFCU was "not complying with federal lending rules." Id. at ¶ 14.

Plaintiff alleges that, "from the beginning of her employment" and throughout her time working as a loan processor, FTFCU managers and human resources (HR) executives harassed her at work. Id. at ¶ 13. FTFCU management's comments to Plaintiff included: "You're asking too many questions," "You're overthinking the rules, just get the file done," "The rule doesn't apply," "That's not how we do it here at First Tech," "Don't worry about it," "Just finish the file," "Just focus on your docs getting out," and "You're not getting enough docs out." Id. at ¶ 14.

In June 2014, Plaintiff was assigned a new position, quality assurance analyst. FTFCU management continued making "inappropriate and derogatory comments." Id. at ¶ 15. Plaintiff attempted to inform HR of Plaintiff's managers' actions; this led to "a substantial escalation in the actions creating a hostile work environment." Id. at ¶ 15.

During the month of September 2014[1], Plaintiff was "very sick and attempted to use family medical leave." Id. at ¶ 23. During this time, she was repeatedly asked inappropriate questions by her managers, James and Marilyn.[2] Plaintiff was also asked to provide "personal

---

[1] Reading paragraph 23 in the context of the entire Complaint, the Court assumes Plaintiff refers to events that occurred in September 2014, even though she fails to indicate a specific year. See Compl. ¶ 23.
[2] Plaintiff does not provide the last names for several individuals referenced in the Complaint, including James and Marilyn.

3 – OPINION & ORDER

and protected information" in order "not to be written up for her absence from work." Id. at ¶ 23. Plaintiff told James and Marilyn that their questions violated the Family Medical Leave Act (FMLA) and the Health Insurance Portability and Accountability Act (HIPAA), and made Plaintiff feel harassed and afraid. Id.

Plaintiff claims that her gender exacerbated the hostile work environment. Generally, Plaintiff alleges that women were treated differently than men at FTFCU, "in terms of the tone and attitude taken towards [women]." Id. at ¶ 31. Specifically, Plaintiff alleges that her manager, James, had a hostile form of communicating with Plaintiff and other female employees, and that James' "physical contact was unwelcome." Id. at ¶ 17.

In an October 24, 2014 meeting, Plaintiff shared her concerns about James' behavior with James and Marilyn. Id. Plaintiff spoke about "the repeated physical contact by James" and stated that Plaintiff had been "scared ever since [James'] hostile altercation with Plaintiff back in August 2014." According to Plaintiff, "James' hostility toward Plaintiff was the worst when Plaintiff was confined in a private room with the door closed." Id. at ¶ 21.

In the same meeting, Plaintiff informed Marilyn that "Marilyn was falsely accusing and confronting Plaintiff . . . in a manner that was very unprofessional, accusatory, and derogatory[.]" Id. Plaintiff told Marilyn to "please choose your words carefully." Id. Soon after this meeting, Marilyn moved Plaintiff's workspace to a new location. Id. at ¶ 22. Marilyn did not communicate to Plaintiff how moving her workspace resolved any of Plaintiff's concerns. Id.

On October 31, 2014, Plaintiff met with Kim, "the Team Lead [with whom] Marilyn indicated that Plaintiff could communicate her concerns[.]" Id. at ¶ 21. Plaintiff told Kim that Plaintiff was uncomfortable with Marilyn's decision to move Plaintiff's workspace. Id. Plaintiff perceived Marilyn's actions as punishment for Plaintiff sharing her concerns. Id.

On November 4, 2014, Plaintiff met with Marilyn and Justin, an HR employee. Id. at ¶ 19. Justin disregarded and dismissed Plaintiff's concerns about a hostile work environment. Id. Plaintiff was given a written warning because she was "disrespectful and showing an unwillingness to be cooperative[.]" Id. Plaintiff refused to sign the warning, despite Justin's insistence that she sign the document. Id. at ¶ 20. Plaintiff requested, but Justin refused, an explanation in writing about how HR or Marilyn was addressing Plaintiff's concerns about a hostile work environment. Id. at ¶ 24.

On November 5, 2014, Plaintiff contacted FTFCU's toll-free reporting line and filed an official complaint. Id. at ¶ 25. On or about November 6, 2014, Plaintiff was informed that HR would meet with her. Id. at ¶ 34. Plaintiff was told that she could not bring anyone with her to the meeting. Id. On November 7, 2014, Plaintiff was terminated. Id. at ¶ 25.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" Id. at 679.

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (citations omitted).

## DISCUSSION

**I.      Claims 1 and 3—Title VII**

Plaintiff's first and third claims allege violations of 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964. Claim 1 alleges that Plaintiff was discriminated against based on her gender and Claim 3 alleges that she was retaliated against for complaining about a hostile work environment.

In order to bring a Title VII cause of action in a district court, a plaintiff must first exhaust her administrative remedies. Greenlaw v. Garrett, 59 F.3d 994, 997 (9th Cir. 1995) (citing Brown v. General Services Administration, 425 U.S. 820, 832 (1976)). To exhaust administrative remedies under Title VII, a complainant must file a timely charge with the Equal Employment Opportunity Commission (EEOC) and allow the agency time to investigate the charge. Lyons v. England, 307 F.3d 1092, 1103-04 (9th Cir. 2002); Weeg ex rel. Weeg v. Ortiz & Associates, Inc., 556 F. Supp. 2d 1188, 1190 (D. Or. 2008); see also Wiley v. Johnson, 436 F. Supp. 2d 91, 95 (D.D.C. 2006) ("The filing of an administrative charge with the EEOC is a jurisdictional prerequisite to maintaining a Title VII action in federal district court.").

Plaintiff does not allege that she filed an administrative claim with the EEOC prior to filing this action; therefore, the Court does not have jurisdiction over Plaintiff's Title VII claims. Accordingly, the Court dismisses Claims 1 and 3.

**II.     Claims 2 and 4—42 U.S.C. § 1981**

Plaintiff's second and fourth claims allege violations of 42 U.S.C. § 1981. There is no mention, either in the claims or in any other part of the Complaint, of Plaintiff's race or ethnicity.

Section 1981 prohibits discrimination on the basis of race or ethnicity. See, e.g., Jones v. Bechtel, 788 F.2d 571, 574 (9th Cir. 1986) (explaining that section 1981 provides an action for discrimination based on race but not for discrimination based on sex); Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) (holding that section 1981 does not apply to discrimination based on national origin).

Because Plaintiff's Complaint does not allege any facts from which the Court could conclude that she was discriminated against based on her race or ethnicity, the Court dismisses Claims 2 and 4.

**III.    Claim 6—Intentional infliction of emotional distress (IIED)**

Plaintiff's sixth claim alleges that Defendants inflicted emotional distress on her by discriminating against her based on her gender, harassing her, falsely accusing her of failing to show up for work, and interfering with her attempts to seek new employment. Compl. ¶ 74.

To sustain her IIED claim, Plaintiff must show that Defendants intended to inflict severe emotional distress, that Defendants' acts were the cause of Plaintiff's severe emotional distress, and that Defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 563, 901 P.2d 841, 849 (1995). Conduct that is merely "rude, boorish, tyrannical, churlish, and mean" does not support an IIED claim. Patton v. J.C. Penney Co., 301 Or. 117, 124, 719 P.2d 854, 858 (1986). "[T]he tort does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life even when the intentional conduct causing plaintiff's distress otherwise qualifies for liability." Hall v. The May Dep't Stores Co., 292 Or. 131, 135, 637 P.2d 126, 129 (1981); see also Watte v. Maeyens, 112 Or. App. 234, 237, 828 P.2d 479, 480–81 (1992) (no claim where employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and saboteurs, then fired them all); Madani v. Kendall Ford, Inc., 312 Or. 198, 205–06, 818 P.2d 930, 934 (1991) (no claim where employee terminated for refusing to pull down pants).

In a 2008 case, the Oregon Court of Appeals explained the following parameters of the tort:

> A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability....
> \* \* \*
> The classification of conduct as "extreme and outrageous" depends on both the character and degree of the conduct. As explained in the Restatement at § 46 comment d:

> "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."
>
> Whether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances. We consider whether the offensiveness of the conduct exceeds any reasonable limit of social toleration, which is a judgment of social standards rather than of specific occurrences.

House v. Hicks, 218 Or. App. 348, 358–60, 179 P.3d 730, 737–39 (2008) (internal quotations and citations omitted).

The relationship between the parties may have a significant bearing on how to characterize the specific conduct at issue. Thomas v. City of Portland, No. CIV.05-1059-ST, 2007 WL 2286254, at *16 (D. Or. Aug. 3, 2007) (citing McGanty, 321 Or. at 548). A defendant's position in relationship to the plaintiff may "impose[ ] on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's length encounters among strangers." McGanty, 321 Or. at 547-48.

Most of the alleged conduct here falls substantially short of what is required to support an IIED claim. Defendants' alleged "harassing comments" such as "You're asking too many questions" or "Just focus on your docs getting out," do not come close to the extreme and atrocious behavior contemplated by an IIED claim. Similarly, while FTFCU management's pressure on Plaintiff to sign a written warning she disagreed with and the decision to move Plaintiff's workspace may have been unfair or insensitive, they are not outrageous. Plaintiff presents no facts in support of her allegation that Defendants interfered with her attempts to seek new employment. Finally, false accusations and questions regarding Plaintiff's medical leave may have been rude or hostile, but they do not "go beyond all possible bounds of decency[.]"

One of Plaintiff's allegations could potentially form the basis of an IIED claim. Plaintiff alleges that she was subjected to repeated unwelcome physical contact from her manager, James, and that James had a "hostile form of communicating" with both Plaintiff and other female subordinates. Compl. ¶¶ 17, 21, 22. However, Plaintiff does not provide any details about the nature of the contact, form of communication, or frequency of the alleged incidents.

Cases in Oregon have allowed IIED claims to proceed when they involve "acts of psychological and physical intimidation." Lathrope–Olson, 128 Or. App. at 408, 876 P.2d at 347. For example, in Lathrope-Olson, the Oregon Court of Appeals found that a female Native American plaintiff stated a claim for IIED when her supervisor called her a squaw, told her that a squaw was supposed to walk behind her man, stated that all women were good for was between their legs, locked her out of the work van in the rain and snow, and threatened to push her into the path of oncoming vehicles. Similarly, the female plaintiff in Mains v. II Morrow, Inc., 128 Or. App. 625, 877 P.2d 88 (1994), stated an IIED claim because of the defendant's supervisory technique of intimidating women. In Mains, the plaintiff endured daily harassing remarks and physical assaults by her supervisor, which included touching the plaintiff's breasts, shoving the plaintiff, grabbing the plaintiff's ankles, blocking the plaintiff's car, and encouraging other men to do the same. 128 Or. App. at 635.

In contrast, a decision from this district found that a plaintiff did not state a claim when she alleged that she heard sexual comments two or three times a week and was occasionally "brushed up against." Johnston v. Pet's Rx, Inc., No. CIV. 06-1566-KI, 2007 WL 2746918, at *16 (D. Or. Sept. 19, 2007)

Here, Plaintiff's complaint lacks sufficient detail for the Court to determine whether James' behavior was extreme and outrageous. Accordingly, Plaintiff's Claim 6 is dismissed.

## IV.   Claim 7—Failure to provide adequate rest periods

Plaintiff's seventh claim alleges that Defendants violated "the Labor Code" by not providing "adequate rest periods." Plaintiff does not explain what she means by "Labor Code" nor does she specify what law she claims Defendant violated. In support of her claim, Plaintiff alleges that she "regularly worked in excess of 5 and 10 hours a day without being afforded meal [sic] period of at least one half-hour each in which she was relieved of all duties." Compl. ¶ 80. Plaintiff also alleges that she "regularly worked without taking 10 minute breaks." Id. at ¶ 81.

Oregon law requires that employees who have worked at least six hours are entitled to "a meal period of not less than 30 continuous minutes during which the employee is relieved of all duties." OAR 839–020–0050(2)(a). Except as otherwise provided in this rule, if an employee is not relieved of all duties for 30 continuous minutes during the meal period, the employer must pay the employee for the entire 30-minute meal period. OAR 839-020-0050(2)(b). As to breaks, every employer shall provide to each employee, for each segment of four hours or major part thereof worked in a work period, a rest period of not less than ten continuous minutes during which the employee is relieved of all duties, without deduction from the employee's pay. OAR 839-020-0050(6)(a). When an employee's work period is more than eight hours, the employer must provide the employee the number of meal periods and rest periods listed in Appendix A of Oregon Administrative Rule 839-020-0050.

Under Oregon law, "there is no private right of action by an employee for either unprovided rest breaks or unprovided meal breaks." Rogers v. RGIS, LLP, 232 Or. App. 433, 434, 222 P.3d 710, 711 (2009). However, as of July 1, 2010, OAR 839-020-0050 does provide a private right of action for unpaid meal breaks. Gessele v. Jack in the Box, Inc., No. 3:10-CV-960-ST, 2013 WL 1326563, at *36 (D. Or. Jan. 28, 2013) report and recommendation adopted,

11 – OPINION & ORDER

No. 3:1 0-CV-00960-ST, 2013 WL 1326538 (D. Or. Apr. 1, 2013). Thus, as the Gessele court noted, "the distinction between unprovided and unpaid breaks is significant." Id.

Even viewing the facts in the light most favorable to Plaintiff, the Court must dismiss this claim because Plaintiff appears to only allege that she was not *provided* rest or meal breaks, not that she was unfairly or inadequately *paid*. Therefore, she has no private right of action.

**V.    Claim 8—Interference with Prospective Economic Relations**

Plaintiff's eighth claim, interference with prospective economic relations, alleges that Defendants interfered with her ability to perform her job at FTFCU, causing Plaintiff to suffer economic loss and emotional distress.

Under Oregon law, a party may recover damages for wrongful interference with a contract or prospective economic advantage. Whyte v. Praestantia Associates LLC, No. CIV. 08-1267-AA, 2009 WL 5173493, at *7 (D. Or. Dec. 18, 2009) (citing Wampler v. Palmerton, 250 Or. 65, 72–73, 439 P.2d 601 (1968)). Interference with economic relations requires the plaintiff to prove six elements:

> (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage);
> (2) intentional interference with that relationship;
> (3) by a third party;
> (4) accomplished through improper means or for an improper purpose;
> (5) a causal effect between the interference and damage to the economic relationship; and
> (6) damages.

Cron v. Zimmer, 255 Or. App. 114, 125, 296 P.3d 567, 575 (2013) (citing McGanty, 321 Or. at 532).

Here, Plaintiff alleges that Defendants—not third parties—interfered with Plaintiff's professional relationship with Defendant FTFCU. Thus, Plaintiff fails to satisfy the "third party" element of this tort.

To the extent that Plaintiff alleges that "DOES 1 through 20" interfered with her relationship with FTFCU, Plaintiff's claim fails as well. An employee that acts within the scope of employment is not a "third party" to a contract between the employer and another for the purpose of the tort of intentional interference with economic relations. McGanty, 321 Or. at 543. In addition, even if Plaintiff could show that "DOES" did not act within the scope of their employment, Plaintiff fails to put forward any facts to satisfy the second, fourth, and fifth elements of the tort. Therefore, the Court dismisses Claim 8.

### VI.   Claim 10—Intentional violation of the FMLA

Plaintiff alleges "multiple intentional and willful violations of the Family and Medical Leave Act of 1993 all of which are not known at this time by Plaintiff and as information becomes available to Plaintiff, Plaintiff will amend complaint to reflect." Compl. ¶ 107. Plaintiff also alleges that Defendants harassed Plaintiff regarding her medical needs and falsely accused her of failing to show up for work. Plaintiff contends that such conduct was intended to cause distress and that the conduct did in fact cause extreme emotional distress.

The factual allegations Plaintiff makes that relate to FMLA are as follows: (1) in September 2014, Plaintiff was very sick and attempted to use family medical leave; (2) James and Marilyn repeatedly asked Plaintiff inappropriate questions about her need for medical leave; (3) Plaintiff was repeatedly asked to provide information to her direct managers that was personal and protected, in order "not to be written up for her absence from work"; and (4) Plaintiff arrived at work very ill and Defendants, despite being aware of Plaintiff's inability to work due to illness, accused Plaintiff of not being in the office as expected. Compl. ¶¶ 23, 29.

The FMLA creates a private right of action in federal court for employees whose employer: (1) interferes with, restrains, or denies their exercise or attempt to exercise their

13 – OPINION & ORDER

FMLA rights, (2) discharges or otherwise discriminates against them for opposing any practice made unlawful by the FMLA, or (3) discharges or otherwise discriminates against them for filing a charge or instituting a proceeding under the FMLA, for giving information in connection with a FMLA inquiry or proceeding, or for testifying in any FMLA inquiry or proceeding. 29 U.S.C. §§ 2615(a), 2615(b), 2617(a)(2)(A); Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003). "The FMLA implementing regulations prohibit an employer from interfering with an employee's rights under the Act by 'us[ing] the taking of FMLA leave as a negative factor in employment actions.'" Russell v. Mountain Park Health Ctr. Props., LLC, 403 Fed. App'x. 195, 196 (9th Cir. 2010) (quoting 29 C.F.R. § 825.220(c)).

Plaintiff fails to state a claim because she does not identify any way in which Defendants violated FMLA. The Complaint does not make clear whether Plaintiff was in fact able to use FMLA or how Defendants' questions and accusations interfered with Plaintiff's attempt to exercise her FMLA rights. In short, her allegation that Defendants violated FMLA is vague, conclusory, and unsupported by facts. Accordingly, the Court dismisses Claim 10.

**VII.    Claim 11—Intentional violation of FTFCU Internal Definition of Harassment**

Plaintiff alleges that Defendant FTFCU violated its own internal policy against harassment and termination of an employee. In Oregon, "[i]n general, an employer may discharge an employee at any time, for any reason, unless doing so violates a contractual, statutory, or constitutional requirement. Williams v. Lane Cnty., No. CIV. 04-6015-TC, 2004 WL 2332026, at *7 (D. Or. Oct. 15, 2004) (citing Banaitis v. Mitsubishi Bank, 129 Or. App. 371, 376, 879 P.2d 1288 (1994)). However,

> There are exceptions to the general rule. A cause of action will lie against an employer who discharges an employee for performing a public duty, or fulfilling a societal obligation such as serving on a jury, Nees v. Hocks, 272 Or. 210, 219, 536 P.2d 512 (1975), or refusing to commit a potentially tortious act of defamation. Delaney v. Taco

14 – OPINION & ORDER

<u>Time Int'l.</u>, 297 Or. 10, 17, 681 P. 2d 114 (1984). An employer also may be held liable for discharging an employee for pursuing private statutory rights that are directly related to the employment, such as resisting sexual harassment by a supervisor, <u>Holien v. Sears, Roebuck and Co.</u>, 298 Or. 76, 90-97, 689 P.2d 1292 (1984), or filing a claim for workers' compensation benefits. <u>Brown v. Transcon Lines</u>, 284 Or. 597, 588 P.2d 1087 (1978).

<u>Banaitis v. Mitsubishi Bank, Ltd.</u>, 129 Or. App. 371, 376, 879 P.2d 1288, 1293 (1994). Plaintiff fails to identify, and this Court does not find, an exception to the general rule when an employer discharges an employee in violation of an employer's internal policies. Therefore, the Court dismisses Claim 11.

**VIII.    Leave to Amend**

When the Court dismisses a complaint, it must decide whether to grant leave to amend. <u>See</u> 28 U.S.C. § 1653. The Ninth Circuit has repeatedly held that dismissal without leave to amend is improper, even if no request to amend the pleading was made, unless it is clear that the defective pleading cannot possibly be cured by the allegation of additional facts. <u>Snell v. Cleveland, Inc.</u>, 316 F.3d 822, 828 n. 6 (9th Cir. 2002) (citing <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 692 (9th Cir. 2001)); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130–31 (9th Cir. 2000). Thus, the Court grants Plaintiff leave to amend to allege additional facts in support of the dismissed claims.

///

///

///

///

15 – OPINION & ORDER

## CONCLUSION

The Court grants Defendants' Partial Motion to Dismiss [9] Claims 1-4, 6-8, and 10-11. The Court grants Plaintiff leave to amend. If Plaintiff chooses to amend her Complaint, she must do so within 14 days of the date below.

IT IS SO ORDERED.

Dated this 29 day of May, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge